FILED

1   Craig M. Patrick, California Bar No. 255849
    PATRICK LAW FIRM, P.C.
2   3333 Lee Parkway, Suite 600
    Dallas, Texas 75219
3   Telephone: (214) 665-9510
    Facsimile: (214) 665-9511
4

5   Steven Marchbanks, California State Bar No. 214686
    PREMIER LEGAL CENTER, A.P.C.
    610 Newport Beach Center, Suite 1200
6   Newport Beach, California 92660

7   Fletcher V. Trammell, Texas State Bar No. 24042053
    BAILEY PERRIN BAILEY
8   440 Louisiana Street, Suite 2100
    Houston, Texas 77002
9   (*pro hac vice* admission will be requested)

10  W. Craft Hughes, Texas State Bar No. 24046123
    HUGHES ELLZEY, LLP
11  2700 Post Oak Boulevard, Suite 1120
    Houston, Texas 77056
12  (*pro hac vice* admission will be requested)

    *Attorneys for Plaintiffs*
13

14              IN THE UNITED STATES DISTRICT COURT

15           FOR THE CENTRAL DISTRICT OF CALIFORNIA

16  LUDETTE CRISLER and STEPHEN      )  CASE NO. CV 11 01719AHM (JCx)
    LAVERONE, individually and on behalf of )
17  all   others similarly situated,  )  **FIRST AMENDED CLASS ACTION**
                                      )  **COMPLAINT FOR DAMAGES,**
18              v.                    )  **RESTITUTION, AND INJUNCTIVE**
                                      )  **RELIEF**
19  AUDI AG, AUDI OF AMERICA, INC.,   )
    AUDI OF AMERICA, LLC,             )  (1)  Violation of California's Consumer Legal
20  VOLKSWAGEN AG, VOLKSWAGEN         )       Remedies Act;
    BETEILIGUNGS- GESELLSCHAFT        )  (2)  Violation of California's Unfair
21  MBH, VOLKSWAGEN GROUP OF          )       Competition Law;
    AMERICA, INC., and VOLKSWAGEN     )  (3)  Breach of Express Warranty pursuant to
22  DE MEXICO S.A. DE C.V.            )       Song-Beverly Consumer Warranty Act;
                                      )  (4)  Breach of Implied Warranty of
23                                    )       Merchantability pursuant to Song-Beverly
            Defendants.               )       Consumer Warranty Act;
24                                    )  (5)  Breach of the Implied Covenant of Good
                                      )       Faith and Fair Dealing;
25                                    )  (6)  Fraudulent Concealment; and
                                      )  (7)  Unjust Enrichment.
26                                    )
                                      )  DEMAND FOR JURY TRIAL
27                                    )
                                      )
28

1

Plaintiffs Ludette Crisler and Stephen Laverone ("Plaintiffs"), individually and on behalf of all other persons similarly situated, bring this action against Defendants Audi AG, Audi of America, Inc., Audi of America, LLC, Volkswagen AG, Volkswagen Beteilitgungs-Gesellschaft mbH, Volkswagen Group of America, Inc., and Volkswagen de Mexico S.A. de C.V. (collectively, "Defendants"), and allege, upon personal knowledge as to their own conduct, and upon information and belief as to the conduct of others, as follows:

## I.
## NATURE OF THE ACTION

1.      Plaintiffs bring this action individually and on behalf of similarly situated Audi and Volkswagen owners and lessees to redress injuries sustained as a result of Defendants' conduct regarding 2004-2009 Audi and Volkswagen vehicles that suffer from a dangerous but undisclosed safety defect, including the following vehicle models: 2008-2009 Audi TT, 2006-2009 Audi A3, 2005-2007 Audi A4, 2007-2009 Audi A4 Cabriolet, 2007 Audi Q7, and 2004-2006 Volkswagen Touareg.  The vehicles are factory-installed with inherently defective high intensity gas discharge ("HID") headlight systems that intermittently stop working while in use and cause light bulbs to fail prematurely.

2.      Defendants have long been aware of the dangerous HID headlight system defect in 2004-2009 Audi and Volkswagen vehicles equipped with an optional, more expensive HID headlight system with xenon bulbs (collectively, the "Class Vehicles"), but rather than alerting owners and lessees of the vehicles of that unreasonable safety hazard and offering to repair the vehicles, Defendants are concealing the problem from its customers.  As a result, owners and lessees of the Class Vehicles are subject to dangerous driving conditions and traffic citations. Indeed, owners and lessees of the Class Vehicles often drive around for months before realizing that their vehicles' headlights intermittently stop working while in use.  And even when Audi

and Volkswagen owners and lessees do finally discover the problem on their own, Defendants typically charge them hundreds to thousands of dollars to replace part or all of the Class Vehicles' HID headlight system with equally defective parts, resulting in further headlight failures and additional repair expenses.

3.      This action seeks compensatory damages, restitution, injunctive relief, attorneys' fees, and costs.

## II.
## PARTIES

4.      Plaintiff Ludette Crisler is a citizen of the State of California who resides in West Covina, California.

5.      Plaintiff Stephen Laverone is a citizen of the State of California who resides in Stockton, California.

6.      Defendant Audi AG ("Audi AG") is a foreign corporation located at Auto-Union-Str. 2 D-85045 Ingolstadt, Deutschland.  At all relevant times, Defendant Audi AG took part in designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing motor vehicles, including Class Vehicles in the United States, including California.  Defendant Audi AG also drafted and printed the owner's manuals that accompanied Class Vehicles. Through its subsidiary, Defendant Audi of America, LLC, Defendant Audi AG advertises, promotes, and markets its products in a continuous manner in the United States of America, including California.  Defendant Audi AG liaisons, coordinates, and communicates with the other Defendants, including Defendants Volkswagen AG and Volkswagen Group of America, Inc., and their subsidiaries regarding nearly all aspects of its products distributed in the United States, including California.  In April 2008, Defendant Audi AG moved its principal place of business from Auburn Hills, MI to 2200 Ferdinand Porsche Dr., Herndon, VA 20171.  Defendant

1   Audi of America, LLC is the entity through which Defendant Audi AG sells Audi vehicles in the

2   United States.  The assets and revenues of Defendant Audi of America, LLC flow directly onto

3   the balance sheet, income statement and financial statements of Defendant Audi AG.  Further, as

4   set forth on Audi AG's Website ("Statement of interests held by AUDI AG and the Audi Group

5   according to Sections 285 and 313 of the German Commercial Code (HGB) at December 31,

6   2009"), "AUDI AG exercises control [over Audi of America, LLC] as defined by IAS 27.13,

7   Sentence 2."  IAS 27 mandates the consolidation of separate financial statements for a group of

8   entities under the control of a parent.  IAS 27.13, Sentence 2 states that control is presumed even

9   where the parent does not acquire more than half the enterprise's voting rights if the parent has

10  the power to govern the financial and operating policies of the other enterprise under a statute or

11  agreement.  Service of process on Defendant Audi AG is therefore proper by serving it via its

12  subsidiary and agent, Defendant Audi of America, LLC at 2200 Ferdinand Porsche Dr.,

13  Herndon, VA 20171 or c/o Corporation Trust Company at 1209 Orange Street, Wilmington,

14  Delaware 19801.

15      7.      Defendant Volkswagen AG ("VWAG") is a foreign corporation headquartered at

16  Berliner Ring 2 38440 Wolfsburg, Federal Republic of Germany.   At all relevant times,

17  Defendant VWAG took part in designing, engineering, manufacturing, testing, marketing,

18  supplying, selling, and distributing motor vehicles, including the Class Vehicles, in the United

19  States.  Defendant VWAG also drafted and printed the owner's manuals that accompanied Class

20  Vehicles.  Through its wholly owned subsidiaries and agents, Defendant VWAG markets its

21  products in a continuous manner in the United States, including California.  Defendant VWAG is

22  the parent of, controls, and communicates with the other Defendants, including Defendants

23  Volkswagen Group of America, Inc. and Audi AG, regarding nearly all aspects of the Class

24  Vehicles distributed in the United States.  Defendant VWAG maintains a Detroit Office and a

4

VWAG Investor Relations office at 2200 Ferdinand Porsche Dr., Herndon, VA 20171 and has filed forms with the SEC, including Form F-6, the Registration Statement under the Securities Act of 1933.  Defendant VWAG is and at all relevant times was doing business in a continuous manner through a chain of distribution and dealers throughout the United States, including within California and this District, by selling, advertising, promoting, and distributing Volkswagen and Audi vehicles. Service of process on Defendant VWAG is proper by serving it via its wholly owned subsidiary and agent, Defendant VWGoA at 2200 Ferdinand Porsche Dr., Herndon, VA 20171, its offices as represented in the SEC filings and annual reports and website at c/o Corporation Trust Company at West Trenton, New Jersey 08628.

8.     Defendant Volkswagen Beteiligungs Gesellschaft m.b.H. ("VWBG") is a German limited liability company wholly-owned by Defendant VWAG and is headquartered at Berliner Ring 2 38440 Wolfsburg, Federal Republic of Germany.  It is believed that Defendant VWBG took part in the business of designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing motor vehicles, including the Class Vehicles, in the United States. Defendant VWBG also participated in the drafting and printing of the owner's manuals that accompanied the Class Vehicles.  Service of process on Defendant VWBG is proper by serving it via its wholly owned subsidiary and agent, Defendant Volkswagen Group of America, Inc. at 2200 Ferdinand Porsche Dr., Herndon, VA 20171, or c/o Corporation Trust Company at Bear Tavern Road, West Trenton, New Jersey 08628.

9.     Defendant Volkswagen Group of America, Inc. ("VWGoA") is a New Jersey corporation.   In April 2008, Volkswagen of America, Inc. was restructured and renamed Volkswagen Group of America, Inc. and moved its principal place of business from Auburn Hills, MI to 2200 Ferdinand Porsche Dr., Herndon, VA 20171.  Defendant VWGoA was and/or is a wholly owned subsidiary of Defendant VWAG and/or Defendant VWBG.   Defendant

VWGoA owns all of the shares of Defendant Audi of America, LLC. At all relevant times, Defendant VWGoA imported, distributed, sold, and/or serviced Volkswagen and Audi vehicles, including the Class Vehicles, throughout the United States, including California.

10.    Defendant Audi of America, Inc. or Volkswagen Group of America, Inc. d/b/a Audi of America, Inc. ("Audi, Inc.") is a division within Defendant Volkswagen Group of America, LLC and was and/or is wholly owned by Defendant Volkswagen AG and/or Volkswagen Beteiligungs Gesellschaft m. b. H. At all relevant times, Defendant Audi of America, Inc. imported, distributed, and sold Audi vehicles, including the Class Vehicles, in the United States, including California.

11.    Defendant Audi of America, LLC is a limited liability corporation incorporated in Delaware and located at 2200 Ferdinand Porsche Dr., Herndon, VA 20171. Defendant Audi of America, LLC is the sales subsidiary of Defendant Audi AG. Defendant Audi of America, LLC was consolidated into Defendant Audi AG effective January 1, 2007 pursuant to IAS 27.13, thereby acknowledging that Defendant Audi AG has the power to govern the financial and operating policies of Defendant Audi of America, LLC under a statute or agreement. Defendant Volkswagen Group of America, Inc. owns all of the shares of Defendant Audi of America, LLC.

12.    Defendant Volkswagen de Mexico, S. A. De C. V. ("VWM") was and/or is a subsidiary of Defendant VWAG and is located at Autopista Mexico Puebla, Km. 116 San Lorenzo Almecatla Cuautlancingo, Puebla C.P. 72008 Mexico. At all relevant times, Defendant VWM manufactured Class Vehicles. Defendant VWM manufactures two thirds of Volkswagen vehicles sold in the United States. Service of process on Defendant VWM is proper by serving it via its parent, Defendant VWAG, at 2200 Ferdinand Porsche Dr., Herndon, VA 20171.

13.    Defendants' dealers are their agents for motor vehicle repairs.

14.    At all relevant times, Defendants acted through their directors, officers,

6

employees, subsidiaries, affiliates, dealers, and other agents, and their acts were within the course and scope of their employment or agency.

## III.
## JURISDICTION & VENUE

15.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000, exclusive of interests and costs, this is a class action in which at least one member of the Class is a citizen of a state other than Delaware and Virginia, and the Plaintiff Class consists of at least one hundred members.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because Defendants reside in this District.  Defendants reside in this District for purposes of § 1391 because they are subject to personal jurisdiction in this District.  Defendants are subject to general personal jurisdiction in this District because they have continuous and systematic contacts with this District through marketing, advertising, distributing, selling, and/or leasing vehicles in this District.  Defendants are also subject to specific personal jurisdiction in this District because their contacts with this District gave rise to the instant action.  Defendants have purposefully availed themselves of doing business in California under the protection of California's laws, and the exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair play or substantial justice.

17.    Venue is also proper in this District pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred within this District, including Defendants' marketing, distribution, sale and/or lease of Class Vehicles, the purchase or lease of Class Vehicles by Plaintiff Crisler and other members of the Plaintiff Class, and the payment of HID headlight system repair costs by Plaintiff Crisler and other members of

the Plaintiff Class.

18.     Venue is proper in this Court because Plaintiff Crisler resides, purchased a Class Vehicle, and paid HID headlight system repair costs in this Division, and members of the Plaintiff Class include citizens of California who reside and purchased or leased Class Vehicles in this Division.

**IV.**
**SUBSTANTIVE ALLEGATIONS**

19.     Plaintiffs reallege and incorporate by reference each preceding paragraph as though set forth at length forth herein.

20.     Defendants design, develop, manufacture, market, advertise, distribute, sell, and lease a wide range of automotive products under the "Audi" and "Volkswagen" brand names, including passenger and commercial vehicles.  As such, Defendants deal in automobiles and holds themselves out as having knowledge and skill in the design and manufacture of automobiles

21.     This lawsuit concerns 2004-2009 Audi and Volkswagen vehicles factory-installed with an optional HID headlight system.  HID stands for high-intensity discharge, a technical term for the electric arc that produces the light.

22.     According to Defendants, HID headlights, which they also refer to as HID headlamps, are superior to halogen headlights—a less expensive headlight option—because the light emitted is closer in color to sunlight, because the light shines ahead over a broader area of the road, as well as farther forward, to help increase driver visibility, and because HID headlights consume less power and last longer than regular halogen headlights.  The HID headlight system in the Class Vehicles includes the HID bulb and ballast, HID Electronic Control Unit ("EGU"), headlight assembly power circuit, and the associated wiring and connectors.

23.     The HID headlight system factory installed in the Class Vehicles is defective because one or both headlights stop and then start working again while they are in use.   The headlight failure is unpredictable because the headlights fail and then start working randomly and for differing durations.   In addition, because of the sporadic nature of the problem, it is often difficult for consumers or service personnel to diagnose the headlight failures through routine inspections or otherwise.

24.     The inherently defective HID headlight systems in the Class Vehicles have experienced, are experiencing, or will experience continuous and progressive failure problems long before their expected useful life has run.

25.     The defective HID headlight systems in the Class Vehicles pose an unreasonable safety hazard to Plaintiffs, Plaintiff Class members, and others because headlights are critical safety features that function to both illuminate the road for the driver and to notify other vehicles and pedestrians of the vehicle's presence.   A defect that creates a propensity for one or both of the headlights to stop working intermittently while in use can easily lead to automobile accidents and moving-violation penalties.

26.     At all relevant times, Defendants had exclusive knowledge of the HID headlight system defect, and Defendants knew that the defect was not known or reasonably discoverable by Plaintiffs and the Plaintiff Class members without experiencing the defect first hand and thus exposing themselves to an unreasonable safety hazard.   Only Defendants had access to information about the significant risk of intermittent headlight failure through their dealerships, pre-release testing data, warranty data, customer complaint data, replacement part sales data, and other sources of information about the HID headlight system defect in the Class Vehicles.

27.     However, rather than notifying Audi and Volkswagen owners and lessees of the HID headlight system defect or implementing a recall, Defendants intentionally concealed the

9

HID Headlight System defect from Plaintiffs and Class members and failed to disclose it to them in order to induce them to purchase vehicles with a more expensive, optional HID headlight system.

28.     Safe and functional headlights were material to Plaintiffs and Plaintiff Class members' decisions to buy or lease the Class Vehicles.  A reasonable consumer expects and assumes that when they buy a vehicle, it includes safe and functional headlights.  A reasonable consumer further expects and assumes that Defendants will not sell vehicles with known safety defects, such as the HID headlight system defect, and will disclose any such defect to their customers.

29.     Defendants have violated, and continue to violate, California Civil Code section 1795.90, *et seq.* (the "California Secret Warranty Law").  The California Secret Warranty Law was enacted to abolish "secret" warranties.  The term "secret warranty" is used to describe the practice by which an automaker establishes a policy to pay for repair of a defect without making the defect or the policy known to the public at large.  A secret warranty is usually created when the automaker realizes that a large number of its customers are experiencing a defect not covered by a factory warranty, and decides to offer warranty coverage to individual customers only if, for example, the customer complains about the problem first.  The warranty is considered "secret" because all owners are not notified of it.  Instead, the automaker usually issues a Technical Service Bulletin ("TSB") to its regional offices and/or dealers on how to deal with the defect, although a TSB or other formal document is not necessary to create a secret warranty.  Because owners and lessees do not know about the cost-free repair, the automaker only has to repair the vehicles of those consumers who complain loudly enough.  The quiet consumer either does not fix the problem or pays to fix the defect by him or herself.

30.     Each Defendant is a "manufacturer" as that term is defined by section 1795.90 of

1  the California Civil Code.  Section 1795.92 of the California Civil Code imposes several duties

2  on auto manufacturers like Defendants, each of which is designed to do away with secret

3  warranties.

4         31.    Plaintiffs and the members of the Plaintiff Class are "consumers" as that term is

5  defined by section 1795.90 of the California Civil Code.  The California Secret Warranty Law

6  requires automakers to notify consumers, by first-class mail, within 90 days of adoption,

7  whenever they enact "any program or policy that expands or extends the consumer's warranty

8  beyond its stated limit or under which [the] manufacturer offers to pay for all or any part of the

9  cost of repairing, or to reimburse consumers for all or any part of the cost of repairing, any

10 condition that may substantially effect vehicle durability, reliability, or performance.

11        32.    The California Secret Warranty Law also requires automakers to provide the New

12 Motor Vehicle Board with a copy of the notice described above, so the public can view, inspect,

13 or copy that notice.

14        33.    In addition, the California Secret Warranty Law requires automakers to advise

15 their dealers, in writing, of the terms and conditions of any warranty extension, adjustment, or

16 reimbursement program.

17        34.    The California Secret Warranty Law also requires an automaker to "implement

18 procedures to assure reimbursement of each consumer eligible under an adjustment program who

19 incurs expenses for diagnosis and repair of a condition subject to the program prior to acquiring

20 knowledge of the program."

21        35.    In May 2006, Defendants acknowledged the HID headlight system defect by

22 issuing a secret TSB to only their dealers describing the problem associated with the HID

23 headlight system defect.  The May 2006 TSB describes the problem as follows:

            *Lighting-HID Headlamp Flickers or is Inoperative*

11

Condition
High Intensity Gas Discharge (HID) Lamp Flickers or is Inoperative
One High Intensity Gas Discharge (HID) lamp . . . flickers or
becomes inoperative.

36.     After describing the defective condition, the May 2006 TSB instructs Defendants' dealers to first "Inspect HID lamp connectors for corrosion and clean as necessary," and if after this procedure the "High Intensity Gas Discharge (HID) lamp continues to flicker and/or is inoperative[, to] Replace [the] affected HID lamp."

37.     According to the May 2006 TSB, the defect in the HID headlight system may be cured by cleaning the HID connectors and/or replacing the HID light bulbs.  The May 2006 TSB describes how to replace the HID light bulbs, and instructs dealers to enter a secret code to obtain reimbursement for the repair costs.

38.     Similarly, in August 2009, Defendants issued another secret TSB to their dealers describing the problem associated with the HID headlight system defect as follows:

One xenon light on either side sporadically flickers or flashes and
goes out. When the headlamps are turned off and on again or at
ignition cycle, the headlamps may function properly or exhibit the
same behavior.

The August 2009 TSB then instructs Defendants' dealers to "replace the Gas Discharge Bulb."

39.     It is believed that, during the period at issue, Defendants have issued similar TSBs relating to the HID headlight system defect in the Class Vehicles that instruct Defendants' dealers to inspect and clean the HID connectors and replace the HID light bulbs and enter a secret code to obtain reimbursement for the repair costs.

40.     However, as Defendants have known or should have known at all relevant times, cleaning the HID connectors and replacing the HID light bulbs in the Class Vehicles does not remedy the HID headlight system defect because the defect is in the system itself, not just the light bulbs.  Defendants thus misrepresented the nature of the HID headlight system defect by

12

stating in their TSBs that cleaning the HID connectors and/or replacing the HID light bulbs in the Class Vehicles may cure the defect.

41.     Defendants do not pay for inspection and cleaning of HID connectors and replacement of HID light bulbs under their Limited New Vehicle Warranties or any other warranty for the Class Vehicles because Defendants consider them to be maintenance items not covered as part of their warranty coverage.

42.     Through their dealers, Defendants have provided free inspection and cleaning of HID connectors and replacement of the HID light bulbs in the Class Vehicles of those customers who brought their vehicles in to Defendants' dealers and complained most vocally about problems associated with the HID headlight system defect.

43.     Defendants' offers of free inspection and cleaning of HID connectors and replacement of HID light bulbs in the Class Vehicles were not made on an *ad hoc* basis, but rather were made pursuant to a systematic policy communicated to Defendants' regional offices, dealers, and customer service personnel, among others, in order to appease the most vocal customers and preserve Defendants' reputations.  Upon information and belief, the code names for this policy are "good will adjustments," "policy adjustments," or the like.

44.     By extending their warranties to cover inspection and cleaning of HID connectors and replacement of HID light bulbs in the Class Vehicles, Defendants have "expand[ed] or extend[ed] the consumer's warranty beyond its stated limit" and thus adopted an "adjustment program" within the meaning of the California Secret Warranty Law.

45.     The inspection and cleaning of HID connectors and replacement of HID light bulbs "substantially affect vehicle durability, reliability, or performance" because they address the problem of loss of illumination from one or both HID headlights at recurring and unpredictable intervals.  Defendants' offers to provide free inspection and cleaning of HID

13

connectors and replacement of HID light bulbs in the Class Vehicles thus constitute an "adjustment program" within the meaning of the California Secret Warranty Law for that additional reason.

46.     However, because inspection and cleaning of the HID connectors and replacement of the HID light bulbs in the Class Vehicles does not remedy the HID headlight system defect, Defendants have instituted another secret policy of replacing the HID headlight assembly, control unit, and other related parts of the Class Vehicles' HID headlight system for those customers who complain loudly enough, even though the Limited New Vehicle Warranty for their vehicles has already expired.  Unlike the inspection and cleaning of the HID connectors and the replacement of HID light bulbs, the replacement of the HID headlight assembly, control unit, and other related parts of the Class Vehicles' HID headlight system is covered by the Limited New Vehicle Warranty issued for each Class Vehicle.

47.     Defendants' offers of HID headlight system-related repairs outside the Limited New Vehicle Warranty for the Class Vehicles were not made on *ad hoc* basis, but rather were made as part of a systematic policy communicated to Defendants' regional offices, dealers, and customer service personnel, among others, in order to appease the most vocal customers and preserve Defendants' reputations.

48.     By extending their warranties to cover the replacement of the HID headlight assembly, control unit, and other related parts of the HID headlight system in Class Vehicles with an expired Limited New Vehicle Warranty, Defendants have "expand[ed] or extend[ed] the consumer's warranty beyond its stated limit" and thus adopted an "adjustment program" within the meaning of the California Secret Warranty Law.

49.     The replacement of the HID headlight assembly, control unit, and other related parts of the Class Vehicles' HID headlight system "substantially affect[s] vehicle durability,

14

reliability, or performance" because it addresses the problem of loss of illumination from one or both HID headlights at recurring and unpredictable intervals. Defendants' offers to provide free replacement of the HID headlight assembly, control unit, and other related parts of the HID headlight systems in Class Vehicles of their most vocal customers thus constitute an "adjustment program" within the meaning of the California Secret Warranty Law for that additional reason.

50.      As such, Defendants have been obligated to comply with the provisions of the California Secret Warranty Law, but they have not done so.

51.      Defendants did not notify Plaintiffs or any other owners or lessees of Class Vehicles of their right to free HID connector cleaning and HID light bulb replacement. Defendants have also refused to provide free HID light bulb replacement to owners and lessees of Class Vehicles who have complained about HID headlight failures.

52.      Defendants have also refused to reimburse Plaintiffs or any other owners or lessees of Class Vehicles for parts and labor costs they have incurred as a result of the HID headlight system defect.

53.      Upon information and belief, Defendants did not comply with the dealer-notification provision of the California Secret Warranty Law.

54.      Upon information and belief, Defendants also failed to comply with the New Motor Vehicle Board notification procedures.

55.      Furthermore, Defendants' replacement of the HID light bulbs, headlight assembly, control unit, and other related parts of the Class Vehicles' HID headlight system has not remedied the HID headlight system defect because Defendants have used equally defective parts as replacements. Those parts will also malfunction or fail in the future, causing Plaintiffs and Plaintiff Class members to incur additional parts and labor costs.

56.      In addition to concealing the true nature and scope of the inherent HID headlight

system defect in the above-described TSBs, Defendants did not place any terms in their contracts with Plaintiffs and the Plaintiff Class, their owner's manuals for the Class Vehicles, or in their Limited New Vehicle Warranties for the Class Vehicles that informed, let alone conspicuously informed, Plaintiffs and the Plaintiff Class of the existence or nature of the HID headlight system defect.

57.     At all relevant times, Defendants had a duty to disclose the inherent, latent HID headlight system defect in the Class Vehicles to Plaintiffs and the Plaintiff Class because (1) there was a preexisting fiduciary relationship between Defendants on the one hand and Plaintiffs and the Plaintiff Class on the other as a result of the contracts Plaintiffs and the Plaintiff Class entered into with Defendants for the purchase or lease of the Class Vehicles, as well as a result of Defendants' express warranty of repair, replacement, or adjustment of defective parts that extended to Plaintiffs and the Plaintiff Class, (2) a trust and confidence in Defendants by Plaintiffs and the Plaintiff Class is necessarily implied from the nature of their dealing and their position towards each other, (3) the very contracts and transactions between Defendants on the one hand and Plaintiffs and the Plaintiff Class on the other are themselves intrinsically fiduciary and necessarily call for perfect good faith and full disclosure without regard to any particular intention of the parties, (4) Defendants actively concealed material information about the inherent HID headlight system defect in the Class Vehicles from Plaintiffs and the Plaintiff Class, (5) Plaintiffs and the Plaintiff Class did not know of the HID headlight system defect when they purchased or leased the Class Vehicles, and (6) Plaintiffs and the Plaintiff Class had no reason to know of the HID headlight system defect before they purchased or leased the Class Vehicles or thereafter because they could not have discovered the defect through any reasonable inspection of the vehicles before their purchase or lease of the Class Vehicles or thereafter.

58.     Defendants' knowledge of the HID headlight system defect in the Class Vehicles

16

1    gave Defendants more than adequate opportunity to repair or otherwise successfully remedy the

2    defect, which Defendants have failed and/or refused to do.

3        59.    Plaintiffs and the Plaintiff Class reasonably expected that their Class Vehicles

4    would not contain an inherently and latently defective HID headlight system that sporadically

5    stops working while the vehicles are being driven.  The Class Vehicles do not perform in

6    accordance with that reasonable expectation, of which Defendants were aware and intentionally

7    concealed from Plaintiffs and the Plaintiff Class and failed to disclose to them.

8

9        60.    By failing to repair or otherwise remedy the HID headlight system defect in the

10   Class Vehicles, Defendants have forced Plaintiffs and the Plaintiff Class to bear the financial

11   burden associated with the defect, including parts and labor costs incurred as a result of the

12   defect.

13

14       61.    Defendants' intentional concealment of the HID headlight system defect from

15   Plaintiffs and the Plaintiff Class and failure to disclose it to them in its communications with

16   Plaintiffs and the Plaintiff Class was material in that a reasonable person would attach

17   importance to the existence or nonexistence of such information and would be induced to act

18   upon such information when deciding whether to purchase or lease one of the Class Vehicles

19   with the more expensive, optional HID headlight system.

20

21       62.    Plaintiffs and the Plaintiff Class relied on Defendants to disclose known and

22   knowable defects in the Class Vehicles to them, especially defects that pose unreasonable safety

23   hazards such as the HID headlight system defect.

24       63.    If Defendants had disclosed the inherent, latent HID headlight system defect to

25   Plaintiffs and the members of the Plaintiff Class and not concealed it from them, they would not

26   have paid extra for the optional HID headlight system, or they would not have purchased or

27   leased the Class Vehicles.  Furthermore, if Defendants had disclosed the inherent, latent HID

28

17

headlight system defect to Plaintiffs and the members of the Plaintiff Class and not concealed it from them, they would not have paid substantial sums in HID headlight system-related parts and labor costs in the past and/or would not have to incur such costs in the future.  In addition, if Defendants had disclosed the inherent, latent HID headlight system defect to Plaintiffs and the members of the Plaintiff Class and not concealed it from them, they would not have sustained diminution in value damages due to the defect.

64.    Because the information about the HID headlight system defect that Defendants concealed from Plaintiffs and the Plaintiff Class and failed to disclose to them is material, reliance by Plaintiffs and the Plaintiff Class on Defendants' omissions may be presumed.  For the same reason, causation between Defendants' omissions and the injuries sustained by Plaintiffs and the Plaintiff Class may be presumed.

65.    Plaintiff Crisler purchased a new 2005 Volkswagen Toureg with the optional, more expensive HID headlight system on July 31, 2005 from Puente Hills Volkswagen in Industry, California.  Since she purchased the vehicle, Plaintiff Crisler has not driven the vehicle frequently or for long distances.  Approximately four or five months after Plaintiff Crisler purchased the vehicle, a police officer stopped her while she was driving the vehicle at night and told her that the vehicle's driver side headlight was not working.  Plaintiff Crisler turned the vehicle off and restarted it in front of the officer, and the driver side headlight started working again.  Plaintiff Crisler did not notice any more problems with the driver side headlight until a month or so later when it began to fail intermittently while she was driving the vehicle.  Because Puente Hills Volkswagen had gone out of business, Plaintiff Crisler took the vehicle to Bozzani Volkswagen in West Covina, California a few days later to have it serviced.  Plaintiff Crisler informed one of the dealer's employees about the headlight problem.  The employee told her that it did not exhibit any problems when it was tested, and no repairs were made to the vehicle.  The

employee also told Plaintiff Crisler that light bulbs were not covered under the vehicle's warranty.  A couple of months later, the driver side headlight in the vehicle again began to fail intermittently while Plaintiff Crisler was driving the vehicle.  Shortly thereafter, the passenger side headlight in the vehicle began to fail intermittently while in use.  In or around March 2006, Plaintiff Crisler took the vehicle to a mechanic in West Covina to have the driver and passenger side light bulbs replaced because she thought they were just a bad set of light bulbs; Plaintiff Crisler did not take the vehicle back to Bozzani Volkswagen because she was dissatisfied with the quality of the service she had received and the price she had been charged there a few months earlier.  Plaintiff Crisler paid $370 in parts and labor to replace the driver and passenger side HID light bulbs.  A couple of months later, the driver side headlight began to fail intermittently again, followed by the passenger side headlight a few months later.  Having little knowledge about motor vehicles, Plaintiff Crisler did not know what was wrong with her vehicle's headlights.  She rarely drove the vehicle and did not drive at all at night.  In or around April 2008, she took the vehicle to the mechanic in West Covina, who told her that the problem was not with the light bulbs, but with the headlight elements, which needed to be replaced.  The mechanic told her that it would cost her several hundred dollars in parts and labor to replace the headlight elements.  Both headlights in the vehicle continue to fail intermittently whenever it is driven more than twenty or thirty miles.

66.    Plaintiff Laverone purchased a used Audi TT with the optional, more expensive HID headlight system on July 5, 2007 from Niello Audi in Sacramento, California.  Plaintiff Laverone noticed that the driver side HID headlight in the vehicle stopped working on or around August 12, 2010.  Plaintiff Laverone purchased a replacement light bulb on August 15, 2010 from Hammer Lane Volkswagen Mazda of Stockton for $174.40.  The vehicle's driver side HID headlight stopped working again approximately one month later.  On or around September 15,

2010, Plaintiff Laverone took his vehicle to Hammer Lane Volkswagen Mazda, where the driver side light bulb was replaced at no cost after Plaintiff Laverone complained about the problem. Approximately two weeks later, the driver side HID headlight stopped working once again. Plaintiff Laverone took the vehicle back to Hammer Lane Volkswagen Mazda on or around October 1, 2010.  Correctly suspecting that the problem was not with the light bulb itself, Plaintiff Laverone switched the driver side light bulb with the passenger side light bulb in front of one of the dealer's employees, and both headlights began working.  Despite being shown that the problem was with the HID headlight system and not the light bulbs, the dealer refused to provide any additional parts or labor to fix the problem.  The dealer's employee even misrepresented to Plaintiff Laverone that the problem was not widespread.  The driver side HID headlight in Plaintiff Laverone's vehicle subsequently failed intermittently while in use every three of four weeks and continues to do so.

67.    As alleged above, Defendants never informed Plaintiffs about the HID headlights system defect at the time of purchase or thereafter.

68.    As the HID headlight system defect in the Class Vehicles is latent, Plaintiffs and many of the Plaintiff Class members did not or will not reasonably discover the defect until it manifests itself after the expiration of the warranty periods for their vehicles.

69.    Because the HID headlight system defect is latent, and because Defendants took steps to conceal and omit the true character, nature, and quality of the Class Vehicles, among other reasons, Plaintiffs and Plaintiff Class members did not discover, and could not reasonably have discovered, the defect and problems alleged herein through the exercise of reasonable diligence prior to purchase or lease of the Class Vehicles or thereafter.  Accordingly, under this discovery rule, the causes of action alleged herein accrued upon discovery of the HID headlight system defect in the Class Vehicles by Plaintiffs and the Plaintiff Class members.

70.     Any applicable statute of limitations to which the discovery rule does not apply has been tolled by Defendants' intentional concealment of the HID headlight system defect from Plaintiffs and the Plaintiff Class and failure to disclose it to them, which has induced Plaintiffs and the members of the Plaintiff Class to delay in filing an action.  Defendants have engaged in affirmative acts to prevent Plaintiffs and the Plaintiff Class from discovering that their headlight problems were caused by the HID headlight system defect in the Class Vehicles within the applicable statutes of limitations, including by intentionally misrepresenting and concealing the true nature and scope of the HID headlight system defect in the TSBs Defendants issued.  In addition, Defendants have intentionally concealed the HID headlight system defect in their communications with Plaintiffs and the Plaintiff Class, including in Defendants owner's manuals and manufacturer's warranties for the Class Vehicles, which do not mention the HID headlight system defect.    Defendants' above-described affirmative acts, including their intentional concealment of material facts about the HID headlight system defect, were intended by Defendants to mislead, and had the effect of misleading, Plaintiffs and the Plaintiff Class into believing that the latent and inherent spark HID headlight system defect does not exist in the Class Vehicles.  Therefore, Defendants intended for their above-described affirmative acts to be acted upon by Plaintiffs and the Plaintiff Class in not pursuing claims against Defendants related to the HID headlight system defect.  If Plaintiffs and the members of the Plaintiff Class had known of the inherent and permanent HID headlight system defect in the Class Vehicles earlier, they would have filed actions within a reasonable amount after learning of the defect, as Plaintiffs have done now after discovering the defect.  Accordingly, any applicable statutes of limitations should be equitably tolled, and Defendants should be equitably estopped from relying on any statute of limitations to defeat any of the claims asserted herein.

71.     In addition, Defendants extended Limited New Vehicle Warranties for the Class Vehicles to Plaintiffs and the Plaintiff Class that Defendants have breached and failed to honor. Any time, mileage, or damage limitations, including any exclusion of incidental and consequential damages contained in those warranties, that would act to prevent Plaintiffs or any member of the Plaintiff Class from maintaining a warranty-related claim asserted herein, or to limit the damages recoverable under any warranty-related claim asserted herein, is unconscionable and unenforceable for the following reasons: (1) Defendants knew that the HID headlight systems in the Class Vehicles were inherently and latently defective at the time of sale or lease and would cause consumers to expend substantial sums of money in parts and labor costs related to the HID headlight systems outside of the warranty periods for the Class Vehicles; (2) Defendants knew the HID headlight defect would cause incidental and consequential damages; (3) Defendants knowingly sold defective products without conspicuously informing consumers about the defect in their manufacturer's warranties or otherwise; (4) Defendants' Limited New Vehicles Warranties for the Class Vehicles are consumer adhesion contracts; (5) Plaintiffs and the members of the Plaintiff Class had no meaningful choice in determining those limitations or that exclusion;   (6) a gross disparity in bargaining power existed between Defendants on the one hand and Plaintiffs and the Plaintiff Class on the other, with Defendants maintaining the superior bargaining position at all times; (7) the terms of Defendants' Limited New Vehicles Warranties unreasonably favor Defendants over Plaintiffs and the Plaintiff Class; and (8) Defendants have carried out a scheme to deliberately cheat the large amount of consumers comprising the Plaintiff Class out of money.  Any such time, mileage, or damage limitation is thus grossly inadequate and insufficient to protect Plaintiffs and the other members of the Plaintiff Class.

72.     Furthermore, any provision prohibiting Plaintiffs or any member of the Plaintiff

Class from bringing a warranty-related claim as a class representative in a class action contained in any of Defendants' Limited New Vehicle Warranties for the Class Vehicles is unconscionable and unenforceable for the following reasons: (1) Defendants knew that the HID headlights systems in the Class Vehicles were defective at the time of their sale or lease and would cause consumers to expend substantial sums of money for parts and labor costs outside of the warranty periods for the Class Vehicles; (2) although the sums Plaintiffs and the members of the Plaintiff Class have paid or will have to pay for parts and labor costs outside of the warranty periods for the Class Vehicles are substantial, Defendants knew or should have known that the HID headlight system defect would predictably cause small amounts of damages on a person by person basis; (3) Defendants knew or should have known that the cost of litigating the individual claims of Plaintiffs and the Plaintiff Class would be prohibitive and that Plaintiffs and the Plaintiff Class would thus have no effective remedy at all outside of a class action; (4) Defendants' Limited New Vehicles Warranties for the Class Vehicles are consumer adhesion contracts; (5) Plaintiffs and the members of the Plaintiff Class had no meaningful choice in determining that prohibition; (6) a gross disparity in bargaining power existed between Defendants on the one hand and Plaintiffs and the Plaintiff Class on the other, with Defendants maintaining the superior bargaining position at all times; (7) the terms of Defendants' Limited New Vehicles Warranties unreasonably favor Defendants over Plaintiffs and the Plaintiff Class; and (8) Defendants have carried out a scheme to deliberately cheat the large amount of people comprising the Plaintiff Class out of money.  As such, the enforcement of any such provision would permit Defendants to insulate themselves from liability for their wrongdoing, thwarting the policy behind class actions.

73.     Finally, any provision that excludes implied warranty coverage for Class Vehicles used for business or commercial purposes that is contained in Defendants' Limited New Vehicle

Warranties is unconscionable and unenforceable because: (1) Defendants' Limited New Vehicle Warranties are consumer adhesion contracts; (2) Plaintiffs and the members of the Plaintiff Class had no meaningful choice in determining that exclusion; (3) the terms of Defendants' Limited New Vehicle Warranties unreasonably favor Defendants over Plaintiffs and the Plaintiff Class; (4) a gross disparity in bargaining power existed between Defendants on the one hand and Plaintiffs and the Plaintiff Class on the other, with Defendants maintaining the superior bargaining position at all times; and (5) Defendants knew that the HID headlight systems in the Class Vehicles were defective at the time of their sale or lease and would cause consumers to expend excessive sums of money for parts and labor costs regardless of the purpose for which those vehicles are used.

## V.
## CLASS ACTION ALLEGATIONS

74.    Pursuant to Rules 23(b) and (c) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on their own behalf and on behalf of the proposed Plaintiff Class.  Plaintiffs seek certification of a Plaintiff Class that consists of:

> All persons or entities domiciled or residing in the State of California who purchased or leased at least one of the Class Vehicles.

Plaintiffs also seek certification of the following Plaintiff Subclass:

> All persons domiciled or residing in the State of California who purchased or leased at least one of the Class Vehicles primarily for personal, family, or household purposes.

Excluded from the Class are: (a) Defendants, any entity in which they have a controlling interest, their legal representatives, officers, directors, employees, assigns, and successors, and any other entity related to or affiliated with Defendants, and (b) any claims for personal injury damages.

75.     Plaintiffs and the Plaintiff Class assert the causes of action in Counts I-II and V-VII.

76.     Plaintiffs and the Plaintiff Subclass assert the causes of action in Counts III-IV.

77.     The Class is comprised of thousands of purchasers of the Class Vehicles throughout the United States, making joinder impracticable.  The exact number of members of the Plaintiff Class is unknown, but their identity can be ascertained through Defendants' records and appropriate investigation and discovery.  The disposition of the numerous claims of the members of the Plaintiff Class in a single class action will provide substantial benefits to all parties and to the Court.

78.     There is a well-defined community of interest in the questions of law and fact affecting Plaintiffs and the Plaintiff Class.  The questions of law and fact common to Plaintiffs and the Plaintiff Class predominate over questions affecting only individual members of the Plaintiff Class, and include, but are not limited to, the following:

(a)     Whether the there is an inherent, latent defect in the HID headlight systems in the Class Vehicles that poses an unreasonable safety hazard;

(b)     Whether Defendants knew or should have known that the Class Vehicles and their HID headlight systems are inherently and latently defective;

(c)     Whether Defendants intentionally concealed the HID headlight defect in the Class Vehicles from Plaintiffs and the Plaintiff Class and failed to disclose it to them;

(d)     Whether Defendants have represented to Plaintiffs and the Plaintiff Class that the Class Vehicles have characteristics or benefits that they do not by concealing the HID headlight system defect from them and failing to disclose it to them;

(e)     Whether Defendants have represented to Plaintiffs and the Plaintiff Class that the Class Vehicles are of a particular standard, quality, or grade when they are of another by concealing the HID headlight system defect from them and failing to disclose it to them;

(f) Whether Defendants have advertised the Class Vehicles with the intent not to sell them as advertised by concealing the HID headlight system defect from Plaintiffs and the Plaintiff Class and failing to disclose it to them;

(g) Whether Defendants have represented to Plaintiffs and the Plaintiff Class that their transactions with Plaintiffs and the Plaintiff Class involving the Class Vehicles conferred benefits on Plaintiffs and the Plaintiff Class that were not, in fact, conferred by concealing the HID headlight system defect from them and failing to disclose it to them;

(h) Whether Defendants have represented to Plaintiffs and the Plaintiff Class that the subjects of transactions involving the Class Vehicles have been supplied in accordance with previous representations when they have not by concealing the HID headlight system defect from them and failing to disclose it to them;

(i) Whether Defendants' above-described conduct regarding the Class Vehicles was and still is unfair, unlawful, misleading and/or likely to deceive consumers;

(j) Whether Defendants' above-described omissions are material;

(k) Whether Defendants have failed or refused to repair, replace, adjust, or otherwise remedy the HID headlight system defect in the Class Vehicles;

(l) Whether Defendants have breached their express warranties for the Class Vehicles;

(m) Whether the Class Vehicles were unmerchantable at the time of their sale or lease because their defective condition does not pass without objection in the automotive trade;

(n) Whether the Class Vehicles were unmerchantable at the time of their sale or lease because their defective condition renders them unsuitable for the purposes for which they are intended to be used;

(o) Whether Defendants breached their implied covenant of good faith and fair dealing for the Class Vehicles by intentionally concealing the HID headlight defect from Plaintiffs and the Plaintiff Class and failing to disclose it to them;

(p) Whether, as a result of Defendants' failure or refusal to remedy the HID headlight system defect in the Class Vehicles and Defendants' intentional concealment of the defect from Plaintiffs and the Plaintiff Class and failure to disclose it to them, Plaintiffs and the Plaintiff Class members have paid extra for the optional HID headlight system, incurred and/or will incur substantial HID headlight system-related parts and labor costs, and incurred diminution in value damages;

26

(q)   Whether Plaintiffs and the Plaintiff Class are entitled to compensatory damages, punitive damages, injunctive relief, restitution, attorneys' fees, and costs as a result Defendants' conduct alleged herein; and

(r)   Whether Defendants should be declared financially responsible for notifying all members of the Plaintiff Class about the HID headlight system defect in the Class Vehicles.

79.   Plaintiffs assert claims that are typical of the Plaintiff Class, having each purchased one of the Class Vehicles with the HID headlight system defect.  Plaintiffs and the members of the Plaintiff Class have similarly suffered harm arising from the HID headlight defect in the Class Vehicles and Defendants' intentional concealment of the defect from Plaintiffs and the Plaintiff Class and failure to disclose it to them.

80.   Injuries sustained by Plaintiffs and the members of the Plaintiff Class flow, in each instance, from a common nucleus of operative facts—the HID headlight system defect in the Class Vehicles and Defendants' intentional concealment of the defect from Plaintiffs and the Plaintiff Class and failure to disclose it to them.

81.   Plaintiffs are adequate representatives of the Plaintiff Class because their interests do not conflict with and are not antagonistic to the interests of the members of the Plaintiff Class they seek to represent.  Plaintiffs will fairly and adequately represent and protect the interests of the Plaintiff Class.  Plaintiffs have retained attorneys who are competent and experienced in the prosecution of class litigation and other complex litigation.

82.   Plaintiffs and the members of the Plaintiff Class have all suffered and will continue to suffer substantial damages due to the HID headlight system in the Class Vehicles and Defendants' intentional concealment of that defect and failure to disclose it their customers.  A class action is superior to other methods for the fair and efficient adjudication of the subject controversy.  Absent a class action, the members of the Plaintiff Class likely will find the cost of

litigating their individual claims to be prohibitive, and will have no effective remedy at all. Because of the relatively small size of the individual claims of the members of the Plaintiff Class, few members of the Plaintiff Class likely could afford to seek legal redress on their own. Absent a class action, members of the Plaintiff Class will continue to sustain damages, and Defendants' misconduct will proceed without remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.   Additionally, Defendants have acted, and failed to act, on grounds generally applicable to Plaintiffs and the Plaintiff Class, requiring Court imposition of uniform relief to insure compatible standards of conduct toward Plaintiffs and the Plaintiff Class.

83.     Notice can be provided to the Plaintiff Class via internet publication and through the U.S. postal service.

## VI.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.***

84.     Plaintiffs reallege and incorporate by reference each preceding paragraph as though set forth at length herein.

85.     Each Defendant is a "person" within the meaning of section 1761(c) of the California Civil Code.

86.     Plaintiffs and the members of the Plaintiff Class are "consumers" within the meaning of section 1761(d) of the California Civil Code.

87.     The Class Vehicles are "goods" within the meaning of section 1761(a) of the California Civil Code.

88.     The purchases and leases of the Class Vehicles by Plaintiffs and the members of

the Plaintiff Class constitute "transactions" within the meaning of sections 1761(e) and 1770 of the California Civil Code.

89.     Venue is proper under section 1780(d) of the California Civil Code because Plaintiff Crisler purchased a Class Vehicle and paid HID headlight replacement costs for those vehicles in Los Angeles County, California, and because Defendants are doing business in Los Angeles County.  Affidavits of Plaintiffs establishing this Court as the proper venue for this action are attached hereto as Exhibits A-B.

90.     As alleged above, Defendants have known and should have known about the inherent defect in the HID headlight systems of the Class Vehicles at all relevant times, yet Defendants have failed or refused to fix the defect and intentionally concealed the defect from Plaintiffs and the Plaintiff Class and failed to disclose it to them.

91.     For the reasons described above, Defendants had a duty to adequately disclose to Plaintiffs and the Plaintiff Class that the Class Vehicles contain the HID headlight system defect.

92.      By intentionally concealing the HID headlight system defect in the Class Vehicles from Plaintiffs and the Plaintiff Class and failing to disclose it to them, Defendants engaged in deceptive business practices prohibited by the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, including: (1) representing to Plaintiffs and the Plaintiff Class that the Class Vehicles have characteristics and benefits that they do not have, in violation of section 1770(a)(5) of the California Civil Code; (2) representing to Plaintiffs and the Plaintiff Class that the Class Vehicles are of a particular standard, quality, or grade when they are of another, in violation of section 1770(a)(7) of the California Civil Code; (3) advertising the Class Vehicles to Plaintiffs and the Plaintiff Class with the intent not to sell them as advertised, in violation of section 1770(a)(9) of the California Civil Code; (4) representing to

29

Plaintiffs and the Plaintiff Class that transactions involving the Class Vehicles conferred benefits that were not, in fact, conferred, in violation of section 1770(a)(14) of the California Civil Code; and (5) representing to Plaintiffs and the Plaintiff Class that the subjects of transactions involving the Class Vehicles have been supplied in accordance with previous representations when they have not, in violation of section 1770(a)(16) of the California Civil Code.

93.     Defendants' above-described omissions regarding the Class Vehicles were, and still are, likely to deceive and mislead consumers into believing that those vehicles do not contain the HID headlight system defect.

94.     Plaintiffs and the members of the Plaintiff Class reasonably interpreted Defendants' above-described omissions to mean that the Class Vehicles do not contain a HID headlight system defect that causes their headlights to turn off intermittently while in use.

95.     Plaintiffs and the members of the Plaintiff Class relied to their detriment on Defendants' above-described omissions in purchasing the Class Vehicles.

96.     As a direct and proximate result of Defendants' omissions regarding the HID headlight system defect, Plaintiffs and the Plaintiff Class members have paid extra for the optional HID headlight system, incurred and/or will incur substantial HID headlight system-related parts and labor costs, and incurred diminution in value damages.

97.     Because Defendants' above-described omissions regarding the Class Vehicles are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions, reliance upon such representations and omissions may be presumed as a matter of law.  The materiality of such representations and omissions also establishes causation between Defendants' conduct and the injuries sustained by Plaintiffs and the Plaintiff Class.

30

98.     It is believed that Defendants' conduct alleged herein was intentional and was specifically designed to induce consumers to purchase the Class Vehicles and/or pay more for the Class Vehicles than they would have otherwise paid if Defendants had not concealed the HID headlight defect from Plaintiffs and the Plaintiff Class and failed to disclose it to them.

99.     Plaintiffs, on behalf of themselves and the Plaintiff Class, demand judgment against Defendants under the CLRA for injunctive relief to Plaintiffs and the Plaintiff Class.

100.    Plaintiffs, on behalf of themselves and the Plaintiff Class, further intend to seek monetary damages, including restitution, and, in light of Defendants' intentional and fraudulent conduct, an award of punitive damages.

101.    Pursuant to section 1782(a) of the California Civil Code, Plaintiffs will serve Defendants with notice of its alleged violations of the CLRA by certified mail return receipt requested.  If within thirty days after the date of such notification, Defendants fail to provide appropriate relief for its violations of the CLRA, Plaintiffs will amend this Complaint to seek monetary (both compensatory and punitive) damages under the CLRA.

102.    Notwithstanding any other statements in this Complaint, Plaintiffs do not seek damages in conjunction with his CLRA claim, and will not do so until the thirty-day period mentioned in the preceding paragraph has passed.

## SECOND CAUSE OF ACTION
**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***

103.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though set forth at length herein.

104.    Plaintiffs have standing to pursue this claim under California's Unfair Competition Law ("UCL") because Plaintiffs suffered an injury in fact and lost money as a result of Defendants' above-described conduct.

105.   As alleged above, Defendants have intentionally concealed the inherent, latent, and dangerous HID headlight system defect in the Class Vehicles from Plaintiffs and the Plaintiff Class members and failed to disclose it to them.

106.   **Unfair business acts and practices:** Defendants' above-described omissions regarding the HID headlight system defect in the Class Vehicles constitute unfair business acts and practices under the UCL because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to its customers in that Defendants have deceptively, misleadingly, unfairly, and unlawfully concealed the inherent, latent, and dangerous HID headlight system defect in the Class Vehicles from Plaintiffs and the Plaintiff Class members and failed to disclose it to them in order to induce them to purchase or lease vehicles with the more expensive, optional HID headlight system.  Defendants' above-described conduct has caused substantial injury to Plaintiffs and the Plaintiff Class in that they have spent money on the Class Vehicles and HID headlight system-related parts and labor costs that would not have been spent if Defendants had not made the above-described omissions.  The injuries suffered by Plaintiffs and the Plaintiff Class are not outweighed by any countervailing benefits to Defendants or competition in general because there is no benefit to Defendants or competition in misleading the public about defects in their vehicles that pose unreasonable safety hazards.  Additionally, Plaintiffs and the Plaintiff Class could not have reasonably avoided their injuries.

107.   **Fraudulent business acts and practices:** Defendants' omissions regarding the HID headlight system defect in the Class Vehicles constitute fraudulent business acts and practices under the UCL because they are likely to deceive consumers into believing that those vehicles do not contain an inherent, latent HID headlight system defect that causes the headlights to fail intermittently while the vehicles are being driven.

108.     **Unlawful business acts and practices:** Defendants' conduct regarding the HID headlight system defect in the Class Vehicles constitutes an unlawful business act and practice under the UCL because that conduct violates California Secret Warranty Law, as set forth above.

109.     Defendants' business practices alleged herein constitute a continuing course of conduct of unfair competition because Defendants continue to conceal the HID headlight system defect from the members of the Plaintiff Class and fail to disclose it to them.

110.     As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent business acts and practices under the UCL, Plaintiffs and the Plaintiff Class members have paid extra for the optional HID headlight system, incurred and/or will incur substantial HID headlight system-related parts and labor costs, and incurred diminution in value damages.

111.     Plaintiffs and the Plaintiff Class relied to their detriment on Defendants' unfair, unlawful, and fraudulent business acts and practices under the UCL.

112.     Because Defendants' above-described omissions regarding the Class Vehicles are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions, reliance upon such representations and omissions may be presumed as a matter of law.  The materiality of those representations and omissions also establishes causation between Defendants' conduct and the injuries sustained by Plaintiffs and the Plaintiff Class.

113.     Defendants' unfair, unlawful, and fraudulent acts and practices under the UCL were specifically designed to induce Plaintiffs and the Plaintiff Class to purchase or lease the Class Vehicles with the more expensive HID headlight system option.

114.     Plaintiffs and the Plaintiff Class are thus entitled to injunctive relief and restitution in an amount to be proven at trial.

115.    Pursuant to section 17203 of the California Business and Professions Code, Plaintiffs and the Plaintiff Class seek an Order of this Court enjoining Defendants from continuing to engage in deceptive, misleading, unfair, and unlawful business practices and any other act prohibited by law, including the acts set forth herein.

### THIRD CAUSE OF ACTION
Breach of Express Warranty **pursuant to Song-Beverly Warranty Act,
Cal. Civ. Code § 1790, *et seq.***

116.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though set forth at length herein.

117.    The Class Vehicles purchased or leased by Plaintiffs and the Plaintiff Subclass members are "consumer goods" within the meaning of section 1791 of the California Civil Code.

118.    Plaintiffs and the members of the Plaintiff Subclass are "buyers" of consumer goods within the meaning of section 1791 of the California Civil Code.

119.    Plaintiffs and the members of the Plaintiff Subclass purchased or leased and use the Class Vehicles primarily for personal, family, or household purposes.

120.    At all relevant times, Defendants were each a "manufacturer," "distributor," "seller," and/or "lessor" within the meaning of section 1791 of the California Civil Code.

121.    At all relevant times, Defendants were merchants with respect to vehicles such as the Class Vehicles.

122.    Through Limited New Vehicle Warranties, Defendants expressly warranted to Plaintiffs and the members of the Plaintiff Subclass that it would repair, replace, or adjust defective parts on the Class Vehicles.

123.    Defendants' express warranty of repair, replacement, or adjustment extended to members of the Plaintiff Subclass who did not purchase Class Vehicles from one of Defendants' dealerships because they are natural persons who could have been expected to use or be affected

34

by the Class Vehicles, as it was foreseeable that the Class Vehicles could be resold to persons other than their original purchasers.

124.    As alleged above, Defendants have had knowledge and been on notice of the HID headlight system defect in the Class Vehicles at all relevant times.

125.    Defendants breached their express warranty of repair, replacement, or adjustment because they have either refused or been unable to successfully repair or otherwise remedy the inherent HID headlight system defect in the Class Vehicles.

126.    Defendants have either refused to cover parts and labor costs related to the HID headlight system defect in the Class Vehicles, or Defendants have replaced parts of the HID headlights systems with equally defective parts in the Class Vehicles and thus not remedied the defect.

127.    Defendants' express warranty of repair, replacement, or adjustment has failed of its essential purpose because, although Defendants have had a reasonable chance to repair or otherwise remedy the common defect described above, all of the Class Vehicles still contain defective HID headlight systems.

128.    Defendants also breached their express warranty of repair, replacement, or adjustment because Plaintiffs and the Plaintiff Subclass have been deprived of the value of the bargain with respect to the Class Vehicles and did not receive the vehicles for which they bargained.  Plaintiffs and the members of the Plaintiff Subclass did not expect, nor would it have been reasonable for them to expect that the more expensive, optional HID headlight systems in their Class Vehicles contain a defect that causes them stop working intermittently while in use during vehicle operation.

129.    As a direct and proximate result of Defendants' breach of the express warranties for the Class Vehicles, Plaintiffs and the Plaintiff Subclass members have paid extra for the

optional HID headlight system, incurred and/or will incur substantial HID headlight system-related parts and labor costs, and incurred diminution in value damages.

130.   Plaintiffs and the members of the Plaintiff Class have reasonably relied on Defendants' warranties regarding the quality, durability, and other material characteristics of the Class Vehicles, and on Defendants' ability to repair, replace, or adjust defective items on the Class Vehicles.

131.   Because Defendants intentionally concealed and omitted material information about the HID headlight system defect in the Class Vehicles, it should be presumed that Plaintiffs and the Plaintiff Subclass relied on Defendants' warranties and on Defendants' ability to repair, replace, or adjust defective items on the Class Vehicles, and that Defendants' breach of the express warranties for the Class Vehicles caused the damages sustained by Plaintiffs and the Plaintiff Subclass.

132.   Plaintiffs and the Plaintiff Subclass notified Defendants of the above-described breach of its express warranty within a reasonable amount of time after Plaintiffs and the members of the Plaintiff Subclass discovered or should have discovered such breach when their vehicles were taken to Defendants' dealerships to have repairs done to the defective HID headlight systems in those vehicles.

133.   Any time, mileage, or damage limitation or restriction that would act to bar the claim for breach of express warranty claim asserted herein, or to limit the damages recoverable under that claim, is unconscionable and unenforceable for the reasons stated above.

134.   Plaintiffs demand judgment against Defendants for compensatory damages in an amount to be determined at trial, together with reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability pursuant to Song-Beverly Warranty Act, Cal. Civ. Code § 1790, *et seq.*

135.   Plaintiffs reallege and incorporate by reference each preceding paragraph as though set forth at length herein.

136.   The Class Vehicles purchased or leased by Plaintiffs and the Plaintiff Subclass members are "consumer goods" within the meaning of section 1791 of the California Civil Code.

137.   Plaintiffs and the members of the Plaintiff Subclass are "buyers" of consumer goods within the meaning of section 1791 of the California Civil Code.

138.   Plaintiffs and the members of the Plaintiff Subclass purchased or leased and use the Class Vehicles primarily for personal, family, or household purposes.

139.   At all relevant times, Defendants were each a "manufacturer," "distributor," "seller," and/or "lessor" within the meaning of section 1791 of the California Civil Code.

140.   At all relevant times, Defendants were merchants with respect to vehicles such as the Class Vehicles.

141.   As merchants with respect to the Class Vehicles, Defendants impliedly warranted to Plaintiffs and the Plaintiff Subclass that the Class Vehicles were merchantable, including that they passed without objection in the automotive trade and were fit for the ordinary purposes for which such goods are used.

142.   Defendants' implied warranty of merchantability for the Class Vehicles extended to members of the Plaintiff Subclass who did not purchase or lease Class Vehicles from one of Defendants' dealerships because they are natural persons who could have been expected to use or be affected by the Class Vehicles, as it was foreseeable that the Class Vehicles could be resold to persons other than their original purchasers.

143.   As alleged above, Defendants have had knowledge and been on notice of the HID

headlight system defect in the Class Vehicles at all relevant times.

144.    The Class Vehicles were unmerchantable at their time of sale or lease because their above-described defective condition does not pass without objection in the automotive trade.

145.    The Class Vehicles were also unmerchantable at their time of sale or lease because their above-described defective condition rendered them unfit for the ordinary purposes for which such goods are used, including reliable and safe transportation.

146.    Defendants therefore breached the implied warranty of merchantability with respect to the Class Vehicles.

147.    Plaintiffs and the Plaintiff Subclass members notified Defendants of the above-described breach of the implied warranty of merchantability within a reasonable amount of time after Plaintiffs and the members of the Plaintiff Subclass discovered or should have discovered such breach when their vehicles were taken to Defendants' dealerships to have repairs done to the defective HID headlight systems in those vehicles.

148.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the Plaintiff Subclass members have paid extra for the optional HID headlight system, incurred and/or will incur substantial HID headlight system-related parts and labor costs, and incurred diminution in value damages.

149.    Any time, mileage, or damage limitation or restriction that would act to bar the claim for breach of the implied warranty of merchantability asserted herein, or to limit the damages recoverable under that claim, is unconscionable and unenforceable for the reasons stated above.

150.    Plaintiffs, individually and behalf of the Plaintiff Subclass, demand judgment against Defendants for compensatory damages in an amount to be determined at trial, together

with reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**

Breach of Implied Covenant of Good Faith and Fair Dealing

151.    Plaintiffs reallege and incorporate by reference each preceding paragraph as though set forth at length herein.

152.    Plaintiffs and the members of the Plaintiff Class entered into agreements to purchase or lease the Class Vehicles or otherwise were under contractual privity with Defendants as a result of the above-described Limited New Vehicles Warranty for Class Vehicles.

153.    Those contracts and warranties were subject to the implied covenant that Defendants would conduct business with Plaintiffs and the Plaintiff Class in good faith and would deal with them fairly.

154.    Defendants' covenant of good faith and fair dealing extended to members of the Plaintiff Class who did not purchase Class Vehicles from one of Defendants' dealerships because they are natural persons who could have been expected to use or be affected by the Class Vehicles, as it was foreseeable that the Class Vehicles could be resold to persons other than their original purchasers.

155.    As alleged above, Defendants have had knowledge and been on notice of the HID headlight defect in the Class Vehicles for several years.  However, Defendants are unable and/or have refused to remedy the HID headlight defect in the Class Vehicles.

156.    As alleged above, Defendants have intentionally concealed the HID headlight defect from Plaintiffs and the Plaintiff Class and failed to disclose it to them.

157.    Defendants breached the implied covenant of good faith and fair dealing by selling or leasing Class Vehicles equipped with defective HID headlight systems to Plaintiffs and the Plaintiff Class in bad faith with knowledge that the contracts and/or warranties were

unconscionable and by abusing its discretion in the performance of the contract by intentionally subjecting Plaintiffs and the members of the Plaintiff Class to a risk (the defect) beyond that which they would have contemplated at the time of purchase.

158.    Defendants also breached the implied covenant of good faith and fair dealing by intentionally concealing the HID headlight defect in the Class Vehicles from Plaintiffs and the Plaintiff Class and/or intentionally omitting to inform Plaintiffs and the Plaintiff Class about the HID headlight defect in the Class Vehicles.

159.    Plaintiffs and the Plaintiff Class notified Defendants of the above-described breach of the implied covenant of good faith and fair dealing within a reasonable amount of time after Plaintiffs and members of the Plaintiff Class discovered or should have discovered such breach when their vehicles were taken to Defendants' dealerships to have repairs done to the defective HID headlight systems.

160.    As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs and the Plaintiff Subclass members have paid extra for the optional HID headlight system, incurred and/or will incur substantial HID headlight system-related parts and labor costs, and incurred diminution in value damages.

161.    Because Defendants' omissions regarding the HID headlight system defect are material, causation between Plaintiffs' damages and Defendants' breach of the implied covenant of good faith and fair dealing should be presumed.

162.    Any time, mileage, or damage limitation or restriction that would act to bar the claim for breach of the implied covenant of good faith and fair dealing asserted herein, or to limit the damages recoverable under that claim, is unconscionable and unenforceable for the reasons stated above.

163.    Plaintiffs demand judgment against Defendants for compensatory damages in an

amount to be determined at trial, together with reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
### Fraudulent Concealment

164.   Plaintiffs reallege and incorporate by reference each preceding paragraph as though set at length herein.

165.   As alleged above, Defendants have known about the inherent HID headlight system defect in the Class Vehicles at all relevant times.

166.   As alleged above, Defendants have intentionally concealed the inherent HID headlight system defect from Plaintiffs and the Plaintiff Class and failed to disclose it to them.

167.   As alleged above, Defendants had a duty to disclose the inherent HID headlight defect in the Class Vehicles to Plaintiffs and the Plaintiff Class.

168.   As a direct and proximate result of Defendants' intentional concealment of the inherent HID headlight system defect in the Class Vehicles from Plaintiffs and the Plaintiff Class and failure to disclose it to them, Plaintiffs and the Plaintiff Subclass members have paid extra for the optional HID headlight system, incurred and/or will incur substantial HID headlight system-related parts and labor costs, and incurred diminution in value damages.

169.   Because the information Defendants concealed and failed to disclose is material, it should be presumed that Plaintiffs and the Plaintiff Class members relied on Defendants' concealment and omissions, and that Defendants' concealment and omissions caused the damages sustained by Plaintiffs and the Plaintiff Class members.

170.   As Defendants' conduct was intentional, Plaintiffs and the Plaintiff Class are also entitled to and seek punitive damages.

### SEVENTH CAUSE OF ACTION
Unjust Enrichment

171.   Plaintiffs reallege and incorporate by reference each preceding paragraph as though set forth at length herein.

172.   Plaintiffs and the Plaintiff Class members conferred benefits on Defendants when they purchased or leased Class Vehicles with more expensive, optional HID headlight systems.

173.   Plaintiffs and the Plaintiff Class also conferred benefits on Defendants when they paid HID headlight system defect-related parts and labor costs to Defendants or their agents or affiliates.

174.   Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the entirety of the benefits conferred on them when Plaintiffs and the Plaintiff Class purchased or leased Class Vehicles given that Defendants have known the inherent HID headlight system defect in the Class Vehicles for years but intentionally concealed that material information from Plaintiffs and the Plaintiff Class and have failed to disclose it to them in order to induce them to purchase the Class Vehicles with more expensive, optional HID headlights system, and Plaintiffs and the Plaintiff Class members would not have purchased the Class Vehicles with optional HID headlight systems, if at all, if they had known of the HID headlight system defect.

175.   It would therefore be unjust and inequitable for Defendants to retain all of the benefits they received and not provide restitution to Plaintiffs and the Plaintiff Class.

176.   The amount of restitution to which Plaintiffs and the Plaintiff Class are entitled should be measured by the amount Plaintiffs and the Plaintiff Class paid for the optional HID headlight systems, in addition to the amount they have paid for HID headlight system-related parts and labor costs to Defendants or their agents or affiliates

## VII.
## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Plaintiff Class, request that the Court order the following relief and enter judgment against Defendants as follows:

a. An order certifying this matter as a class action with Plaintiffs as Class Representatives and Subclass Representatives, and designating Plaintiffs' counsel as Class Counsel and Subclass Counsel;

b. Judgment in favor of Plaintiffs and the Plaintiff Class on Counts I-II and V-VII;

c. Judgment in favor of Plaintiffs and the Plaintiff Subclass on Counts III and IV;

d. An order permanently enjoining Defendants from its improper activities and conduct alleged herein;

e. Pre-judgment and post-judgment interest on monetary relief;

f. An award of reasonable attorneys' fees and costs of this action; and

g. All other and further relief as the Court deems necessary, just, and proper.

## VIII.
## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

By: _____
PATRICK LAW FIRM, P.C.
Craig M. Patrick (California Bar No. 255849)
3333 Lee Parkway, Suite 600
Dallas, Texas 75219
Telephone: (214) 665-9510
Facsimile: (214) 665-9511

PREMIER LEGAL CENTER, A.P.C.
Steven Marchbanks (Cal. S.B. #214686)
610 Newport Beach Center, Suite 1200
Newport Beach, California 92660
Telephone: (877) 441-4441
Facsimile: (619) 330-1955

43

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAILEY PERRIN BAILEY
Fletcher V. Trammell (Texas Bar No. 24042053)
440 Louisiana, Suite 2100
Houston, Texas 77002
ftrammell@bpblaw.com
(713) 425-7100 Telephone
(713) 425-7101 Facsimile

HUGHES ELLZEY, LLP
W. Craft Hughes (Texas Bar No. 24046123)
2700 Post Oak Boulevard, Suite 1120
Houston, Texas 77056
craft@crafthugheslaw.com
(888) 350-3931 Telephone
(888) 995-3335 Facsimile

Dated: June 2, 2011                    *Attorneys for Plaintiffs*